# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

TRAVIS KNAUFF,

             Petitioner,          :     Case No. 1:15-cv-338

  - vs -                       District Judge Michael R. Barrett
                                Magistrate Judge Michael R. Merz

MARK HOOKS, Warden,
 Ross Correctional Institution,

                              :

             Respondent.

# REPORT AND RECOMMENDATIONS

Petitioner Travis Knauff brought this habeas corpus action *pro se*  pursuant to 28 U.S.C.

§ 2254 to obtain relief from his conviction for rape of his daughter and consequent sentence of

life imprisonment without the possibility of parole.  Knauff pleads the following grounds for

relief:

> **GROUND ONE:** Trial court violated right of confrontation under Sixth Amendment by allowing the video recorded statement of his daughter to be played for the jury.
>
> **Supporting Facts:** The court admitted a video-recorded interview to be played in its entirety to the jury. Making the testimony "hearsay" and inadmissible under Evid. R. 803(4). Many aspects of the interview went beyond that required for providing information for Dr. Shapiro's physical exam. The confrontation clause of the 6th Amendment was violated because Petitioner was not permitted to cross-examine the witness in any type of "meaningful" manner.
>
> **GROUND TWO:** Trial court violated right of confrontation under Sixth Amendment by allowing testimony of an accuser to be given "in camera" rather than in open court.

1

**Supporting Facts:** This regards a challenge to the constitutionality of a statute (O.R.C.§2945.481) which permits a witness to testify in the judge's chambers by closed-circuit television, violating the minimum requirements for confrontation rights…which must be "face to face."

**GROUND THREE:** Petitioner was denied his right to effective assistance of trial counsel under the Sixth and Fourteenth Amendments; and consequently was denied equal protection of law and due process by denial of "evidentiary hearing."

**Supporting Facts:** Petitioner suffered ineffective assistance of trial counsel, where counsel failed to address key factual matters when examining Jerrlyn Younts in testimony. Then the court failed to afford an "evidentiary hearing" to facilitate evidence coming forward which calls into question that very testimony.

(Petition, ECF No. 5.)

**Procedural History**

Petitioner Travis Knauff was indicted by the Adams County grand jury on January 13, 2010, on one count of rape with the specification that the victim was under ten years old.  The trial judge initially denied the State's request to permit the victim to testify from some place outside the courtroom.  When she started her testimony, however, she became afraid and was permitted to continue to testify from the judge's chambers.  The jury found Knauff guilty and the trial judge sentenced him to life without parole.

Knauff took a direct appeal to the Ohio Fourth District Court of Appeals which affirmed the conviction.  *State v. Knauff,* No. 10CA900, 2011-Ohio-2725, 2011 Ohio App. LEXIS 2327 (4th Dist. May 24, 2011), appellate jurisdiction declined, 129 Ohio St. 3d 1507 (2011).  The facts as shown by trial testimony were recited by the court of appeals:

> [**\*P3**]  Travis Knauff and Alisha Knauff were previously married, but divorced before the incident. According to Alisha, their

2

daughter D.K. accused Knauff of molesting her at his trailer during his parental visitation.

[*P4] After Alisha contacted the Adams County Sheriff's Department, Detective Jim Heitkemper referred her to the Mayerson Clinic at Cincinnati Children's Hospital for an evaluation. There, social worker Cecelia Friehofer recorded a one-hour interview with D.K. During the interview, D.K. revealed that her father engaged in sexual conduct with her in his bedroom, living room, and in a "forest." She also revealed that she spit Knauff's "pee" into a hole in his bedroom floor. The interview covered a broad range of details related to the abuse.

[*P5] Friehofer summarized what D.K. told her to Dr. Bob Shapiro, who conducted a physical examination. Dr. Shapiro examined D.K. visually and observed nothing out of the ordinary. He testified that he would not have expected to observe any physical signs of sexual contact given that the incident occurred three months prior.

[*P6] Friehofer faxed a report of the interview to Detective Heitkemper, who then obtained and executed two search warrants for Knauff's residence. Executing the first search warrant, Heitkemper removed the portion of the floor containing the hole and a section of pink insulation found underneath the hole. Through the second search warrant, Heitkemper obtained Knauff's DNA by swabbing his mouth. The Sheriff's Office sent the physical evidence from the trailer and DNA swabs of both Knauff and D.K. to the Ohio Bureau of Criminal Identification (BCI) for analysis.

[*P7]  Two BCI employees testified about their findings. The first, a "forensic biologist," testified that her analysis revealed that the insulation contained a combination of both semen and "amylase," which is a substance found in saliva. The second BCI employee conducted DNA testing on the insulation and compared his findings to the DNA samples obtained from Knauff and D.K. He concluded that the sample contained a "major DNA profile," which matched Knauff's DNA. The employee also found a "minor DNA profile" which he could not associate with any individual. He could not reach a conclusion about whether the minor profile belonged to D.K. The employee explained that the minor profile had insufficient DNA information to provide him with the ability to make a comparison. On cross-examination, the employee testified that the information contained in the minor profile could

arguably support the conclusion that the unknown or "foreign" DNA came from as many as four different contributors.

[*P8]  D.K., who was five-years-old, testified at trial. When the prosecutor asked her about the abuse, she became non-responsive and indicated that she was scared. The prosecutor attempted to calm her down but she repeatedly conveyed that she was too scared to testify about the alleged abuse. The court eventually questioned D.K. about her level of fear and asked her what was causing it. She stated that she was scared because of "everyone" in the courtroom and because of her father's presence. When asked to describe her level of fear in terms of a one to ten scale, D.K. responded that she was "real, real, real scared."

[*P9]  The prosecutor asked D.K. if she thought she could testify in the judge's chambers, with only the judge, the state's attorney and the defense counsel present. She said she could. The court then made a finding on the record that D.K. had expressed "extreme fear" that was preventing her from testifying in open court. The court invoked the procedures set forth in R.C. 2945.481(E) for conducting an examination of a child sex abuse witness outside of the courtroom via closed-circuit television.

[*P10] The state continued D.K.'s direct examination in the judge's chambers with the judge and defense counsel present. Court staff used a closed-circuit video system to broadcast D.K.'s testimony to the courtroom, where the jurors and Knauff remained. The record reflects that Knauff could speak to defense counsel during D.K.'s direct examination by the use of a cell phone. On direct, D.K. testified that Knauff stuck his finger in her "pee pee" and her "butt," and that she spit his "pee" in a hole in the floor and the toilet. Defense counsel briefly cross-examined D.K., mainly to clarify whether she told her mother about the abuse allegations first, or whether her mother asked her about the allegations. D.K.'s response was, essentially, she told her mother because otherwise she would not know.

[*P11] Friehofer testified and discussed the general methodology behind the "forensic interview" that she conducted with D.K. She explained that one purpose of the lengthy interview was to gain as much information as possible so that D.K. would not have to discuss the abuse with others. Friehofer explained that another purpose of the interview was to gain information so that medical staff could make appropriate decisions concerning necessary physical or mental health treatment.

[*P12] At the conclusion of Friehofer's testimony, the state played the interview for the jury. Court staff fast-forwarded or muted at least two portions of the interview, apparently in response to an agreement by the prosecutor and defense counsel. The record contains both the complete video-recorded interview and the redacted version.

[*P13] The interview played for the jurors lasted approximately 50 minutes as D.K. describes repetitively, and in detail, the sexual abuse. She alleged that the majority of the abuse occurred in Knauff's bedroom and in the living room. In her own words, she described acts of digital penetration, cunnilingus, and fellatio. She said that Knauff told her to swallow his "pee" but that she refused. She said she spit his "pee" in a hole in his bedroom floor. D.K. additionally described an act of fellatio that occurred in a "forest" while on a trip to Wal–Mart.

[*P14] D.K. described the frequency of the abuse, which she said happened "a lot" and "whenever she stayed the night." D.K. also described specifically where the abuse occurred, and what bodily position she and Knauff would be in when it occurred. D.K. told Friehofer that Knauff would place a "baby box" in front of the door so that no one would enter the room. D.K. stated that during the encounters, she would have her pants and underwear off and Knauff would remain clothed. When the abuse was over, Knauff would put her clothes back on.

[*P15] D.K. also told Friehofer that sometimes other individuals were in the trailer during the abuse. She claimed that Knauff's girlfriend, Jerrylyn Mounts, (sic) was "always" outside on the porch, smoking a cigarette. Her Uncle Sonny Knauff and her Grandma were in their respective bedrooms.

[*P16] The defense introduced the testimony of Jerrylyn Younts. She claimed that she never went outside to smoke cigarettes and would open a window in the living room and blow smoke out of it. She also testified that Knauff was never alone with D.K. in the three or so weeks D.K. stayed with Knauff and his family at the trailer. She admitted, however, that during the day she was away from the trailer at her job.

[*P17] When Knauff testified, he denied any sexual abuse occurred and claimed that D.K. was a liar. Knauff also testified that he was never alone with D.K. And he indicated that his relationship with Alisha Knauff was "very poor." On cross-examination, Knauff admitted that he did not have a job and stayed

> at home during the month of June 2009. He did not dispute that the insulation located underneath the hole in the floor contained his semen. On re-direct, Knauff claimed that he masturbated into the hole after becoming aroused by observing his girlfriend in the shower. Knauff admitted on re-cross that he previously told only his defense counsel the story about masturbating into the hole.

*State v. Knauff (direct appeal), supra.*

While the direct appeal was still pending, Knauff filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. The trial court denied that petition and the Fourth District again affirmed. *State v. Knauff,* 2014-Ohio-308, 2014 Ohio App. LEXIS 282 (4th Dist. Jan. 28, 2014), appellate jurisdiction declined, 139 Ohio St. 3d 1406 (2014). Knauff filed his Petition here a year later on May 21, 2015 (ECF No. 1).

# ANALYSIS

**Ground One:  Violation of the Confrontation Clause**

In his First Ground for Relief, Knauff claims his rights under the Confrontation Clause were violated when the jury was permitted to view a recorded pre-trial statement of the victim. The Warden asserts this claim is procedurally defaulted by Knauff's failure to object at trial.

Knauff raised this claim as his first assignment of error on direct appeal and the Fourth District decided it as follows:

> **III. Admission of the Video-Recorded Interview**
>
> **[\*P20]** In his first assignment of error, Knauff argues that the court abused its discretion by admitting the video-recorded interview. Knauff argues that the interview was hearsay and was not admissible under Evid.R. 803(4) — statements made for purposes of medical diagnosis or treatment.

6

[*P21] First, Knauff contends that D.K. was unaware that she was providing information for medical treatment, therefore her statements were unreliable. Second, Knauff argues that even if portions of the video-recorded interview were admissible under Evid.R. 803(4), the court abused its discretion by playing the "entire" video for the jurors. Knauff contends that many aspects of the interview went beyond that required for providing information for Dr. Shapiro's physical examination. Knauff additionally contends that the playing of the video-recorded interview violated his Confrontation Clause rights because he could not cross-examine D.K. on the statements in the interview in a "meaningful" manner.

A. Standard of Review

[*P22] The admission of evidence is within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, 31 Ohio B. 375, 510 N.E.2d 343, at paragraph two of the syllabus. An abuse of discretion consists of more than an error of judgment; it connotes an attitude of the trial court that is unreasonable, unconscionable, or arbitrary. State v. Lessin, 67 Ohio St.3d 487, 494, 1993 Ohio 52, 620 N.E.2d 72. When applying the abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181, citing Berk v. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

[*P23] Initially, it is significant that Knauff did not object to the admission of the video-recorded interview. In fact, defense counsel specifically stated on the record that he had no objection to the state showing the jurors the video. (Tr. 318.) And defense counsel did not object when the state offered a redacted version of the video into evidence at the close of its case in chief.

[*P24] Evid. R. 103(A) provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]

7

(Emphasis added.)

**[*P25]** Evid. R. 103(A) follows the longstanding rule that the failure to make a specific objection to the admission of evidence waives the objection and it cannot thereafter form the basis of a claim in an appellate court. *Kent v. State* (1884), 42 Ohio St. 426, 430-431. Crim.R. 52(B), however, provides a mechanism by which defendants may obtain review of "plain errors" that affected "substantial rights" even where they failed to object. Thus, Knauff must demonstrate "plain error" in the admission of the video-recorded interview or he has waived its admission.

**[*P26]** "Plain error" exists only when it is clear the verdict would have been otherwise but for the error. *State v. Sanders*, 92 Ohio St.3d 245, 263, 2001 Ohio 189, 750 N.E.2d 90. Plain error review places three limitations on a reviewing court's decision to correct an error not objected to during trial. First, there must be legal error. Second, the error must be "plain." Within the meaning of Crim.R. 52(B), an error is "plain" if there is an "obvious" defect in the trial proceedings. Third, the error has to affect "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002 Ohio 68, 759 N.E.2d 1240. The Supreme Court of Ohio has "interpreted this [latter] aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. The Court further explained, "[e]ven if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.

*State v. Knauff (direct appeal), supra.*

The procedural default doctrine in habeas corpus is described by the Supreme Court as

follows:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual

> prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6ᵗʰ Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6ᵗʰ Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6ᵗʰ Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6ᵗʰ Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6ᵗʰ Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6ᵗʰ Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6ᵗʰ Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6ᵗʰ Cir. 1986); *accord*

*Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Applying the *Maupin* test to this case, the Court notes that Ohio has a contemporaneous objection rule.  *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998).  The Sixth Circuit has repeatedly held this is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107,

124-29 (1982); *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

The Fourth District enforced the contemporaneous objection rule by reviewing this claim for plain error under Ohio R. Crim. P. 52(b). An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl*, 668 F.3d at 337; *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

In his Reply and Traverse, Knauff asserts the procedural default is excused by his trial attorney's ineffective assistance in failing to make the objection (ECF No. 9, PageID 1245). While it is true that ineffective assistance of trial counsel can act to excuse a procedural default, the ineffectiveness claim must itself be properly presented to the state courts. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Knauff never presented this ineffectiveness claim to the state courts.

Accordingly, Ground One is procedurally defaulted and should be dismissed.

**Ground Two: Violation of Confrontation Clause by In Camera Testimony**

In his Second Ground for Relief, Knauff asserts his Confrontation Clause rights were violated when his daughter was permitted to testify in camera rather than "face-to-face." As part

of this claim, Knauff challenges the constitutionality of Ohio Revised Code § 2945.481.

This claim was raised as Knauff's second assignment of error on direct appeal which the

Fourth District decided as follows:

### IV. Constitutionality of Closed-Circuit Television Testimony

[*P47] In his second assignment of error, Knauff attacks the constitutionality of R.C. 2945.481, a statute that permitted D.K. to testify in the judge's chambers by closed-circuit television. Knauff argues that the Supreme Court of the United States, in *Coy v. Iowa* (1988), 487 U.S. 1012, 108 S. Ct. 2798, 101 L. Ed. 2d 857, held "at a minimum" that a court violates a defendant's federal Confrontation Clause rights when it denies a literal face-to-face confrontation with an accusing witness.

A. Standard of Review

[*P48] We review constitutional challenges as a matter of law, ie., de novo. See, e.g., *Ohio Univ. Bd. of Trustees v. Smith* (1999), 132 Ohio App.3d 211, 223, 724 N.E. 2d 1155. Statutes enjoy a strong presumption of constitutionality. *State v. Bloomer*, 122 Ohio St.3d 200, 2009 Ohio 2462, 909 N.E.2d 1254, at ¶41. A party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt. Id.

B. The Confrontation Clause and the Protection of Child Witnesses

[*P49] In Coy the Supreme Court reversed a child molestation conviction where an Iowa statute permitted a child witness to testify behind a screen. The Court noted that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Id. at 1016. In reversing the conviction, the Court emphasized that the Iowa statute required no factual finding of necessity before the court could employ the screen. In other words, the statute presumed that a court could, in all cases, deny the defendant a physical confrontation with an alleged child victim. Id. at 1021.

[*P50] Although the Court noted that Iowa had a "compelling" interest in protecting child abuse victims, it observed that the trial court made no "case-specific" finding that the procedures used were necessary to further that interest. Id. at 1025 (O'Connor , J., concurring.). The Court "le[ft] for another day . . . the question whether any exceptions exist" to the "irreducible literal meaning of

12

the Clause: 'a right to meet face to face all those who appear and give evidence at trial.'" Id. at 1021, quoting *California*, supra, at 1943-1944 (Harsha, J., concurring). (Emphasis sic.)

 **[*P51]** The Court answered this question two years later in *Maryland v. Craig* (1990), 497 U.S. 836, 110 S.Ct. 3157, 111 L. Ed. 2d 666. There, the Court upheld a Maryland closed-circuit television statute and held that the Confrontation Clause did not require a literal face-to-face confrontation in all instances. Id. at 849-850. The Court observed that the core purpose of the Confrontation Clause was to ensure rigorous adversarial testing of accusing witnesses, i.e., cross-examination, providing sworn testimony under penalty of perjury, and jurors' observance of the witnesses' demeanor. Id. at 845-846. And the Court noted that although a face-to-face confrontation formed the core value behind the Confrontation Clause, it was a "preference" rather than a requirement. Id. at 847, 850. In upholding the Maryland statute, the Court held that a denial of a face-to-face confrontation could occur where it is necessary to: 1) further an important public policy; and 2) the procedures provided in lieu of the face-to-face confrontation ensure the reliability of the testimony. Id. at 850.

 **[*P52]** The Maryland statute in question allowed a child abuse victim to testify via closed-circuit television if the trial court found that the child would suffer "serious emotional distress" such that the child could not "reasonably communicate." Id. at fn. 1. The Court held that Maryland had an "important" public policy interest in the protection of minor victims of sex crimes from further trauma. Id. at 855. The Court further held that whether a denial of a face-to-face confrontation was necessary would have to be determined on a case-by-case basis. Id. at 857-858. The Court explicitly decided against specifically defining the "minimum showing of emotional trauma" necessary because the "serious emotional distress" standard, "clearly suffices to meet constitutional standards." Id. at 856. Additionally, the Court observed that where a face-to-face confrontation caused significant emotional distress in a child witness, "there is evidence that such confrontation would in fact disserve the Confrontation Clause's truth-seeking goal." Id. at 857.

 **[*P53]** In *Self*, supra, the Supreme Court of Ohio applied *Craig* and found R.C. 2907.41(A) and (B) to be substantially the same as the Maryland statute. The Court reviewed the procedure under R.C. 2907.41(B)(1)(b) for admitting a child sex abuse victim's videotaped deposition at trial in lieu of live testimony based upon a

finding of "serious emotional trauma" and held it constitutional. Id. at syllabus. [footnote omitted]

[*P54] Nonetheless, Knauff urges us to conclude that *Craig* and *Self* are inapplicable here. In his reply brief Knauff contends that in both cases, the respective Supreme Courts ruled narrowly and limited their holdings that the statutes are constitutional to an application of the "serious emotional distress" (*Craig*) or "serious emotional trauma" (*Self*) elements. Knauff admits that R.C. 2945.481(E)(3) contains a provision for a finding by the trial court of "serious emotional trauma" before invoking the closed-circuit television procedure. However, Knauff points out that the trial court here based its finding of necessity on the (E)(2) subsection, which requires a finding of "extreme fear" in the child witness. Knauff does not explain why this distinction is legally significant, but contends that we should apply the general rule of *Coy* and limit the application of *Craig* and *Self* to findings of necessity based on serious emotional trauma or distress. Although our research revealed no Ohio case addressing this specific issue, we conclude that *Coy* does not require reversal here. We also conclude that there is no significant legal distinction between a finding of necessity based on "serious emotional trauma" or "extreme fear" in terms of the necessity rule applied in *Craig* and *Self*.

C. The Statute in *Coy* Required No Case-Specific Findings

[*P55] The basis of the Court's decision in *Coy* was the statutory presumption in all cases of minor sexual abuse that a court could deny a defendant a face-to-face confrontation with an accusing child witness without any showing of necessity. *Craig* at 844-845. Unlike the statue in *Coy*, R.C. 2945.481 requires case-specific findings of necessity before a judge can utilize the closed-circuit television procedure. Thus, R.C. 2945.481 does not presume that there is no right to face-to-face confrontation and *Coy* is not controlling. See *Self* at 81.

D. R.C. 2945.481(E)(2) satisfies both *Craig* and *Self*.

[*P56] In approving an alternative to face-to-face confrontation the *Craig* Court focused on two major requirements: 1) the procedure must advance an important public policy; 2) the procedures used must maintain the reliability inherent in our system of rigorous adversarial testing. *Craig* at 856-857. Both requirements are satisfied here.

1. (E)(2) Advances Important Public Policy Goals

14

[*P57]   In both *Craig* and *Self*, the important public policy advanced was the protection of minor sex abuse  victims from suffering further trauma by testifying in close physical proximity with the individual who allegedly molested them. Here, the court found that D.K. demonstrated "extreme fear", which caused her to be unable to communicate her testimony.

[*P58]  A minor child who is experiencing "extreme fear" is under some form of severe emotional trauma or distress. "Extreme fear" is, undoubtedly, one of many associated characteristics of severe emotional distress or trauma. And we see no reason to differentiate between a finding of necessity based on "serious emotional trauma" or, as in this case, "extreme fear." Thus, we hold that a finding of "extreme fear" meets the "minimum showing of emotional trauma" and advances the important public policy of preventing further trauma to the child sex abuse witness.

[*P59]  Moreover, as the Court alluded to in *Craig*, a finding of necessity based on "extreme fear" and procedures designed to ameliorate that fear would advance another important public policy, i.e., that of ensuring the reliability of testimonial evidence. A child witness who is suffering "extreme fear" when testifying may have difficulty accurately and honestly conveying his or her testimony.

[*P60]  To ensure that an alternative to face-to-face confrontation is constitutionally justified under *Craig* a trial court must:

> 1) Hear evidence and determine whether use of the closed-circuit television procedure is necessary to protect the welfare of the testifying child witness.

> 2) Find that the defendant's presence — not the courtroom generally -- causes the child's trauma.

> 3) Find that the emotional distress that would be suffered by the child witness is more than "de minimis, i.e., more than 'mere nervousness or excitement or some reluctance to testify[.]'"

Id. at 855-856, quoting *Wildermuth v. State* (1987), 310 Md. 496, 524, 530 A.2d 275.

[*P61]  The trial court heard evidence to determine whether the procedure was necessary to protect D.K. On the witness stand D.K. was unresponsive and expressed fear at testifying. She told the court that her fear was attributable to both Knauff's presence and the courtroom generally. (Tr. 217.) And the trial court found that D.K.'s "extreme fear" was more than de minimis. The court attempted to ascertain her level of fear on a scale of one to ten, to which she responded that she was "real, real, real scared." (Tr. 215.)

2. The Procedures Ensured the Reliability of the Adversarial System

[*P62]  D.K. testified via closed-circuit camera in the physical presence of the judge, the prosecutor, and defense counsel. Both the defendant and the jurors could watch and listen to her responses and observe her demeanor while testifying. Defense counsel cross-examined D.K. and remained in constant communication with Knauff by means of a cell phone. The record further reflects that before defense counsel concluded his cross-examination, he went back into the courtroom and conferred in person with Knauff. Defense counsel then stated on the record that Knauff informed him he wished no further inquiry of D.K.

[*P63]  In sum, we are confident that the procedures outlined in R.C. 2945.481(E)(2) and followed by the trial court retained the reliability of our system of rigorous adversarial testing. Consequently, we conclude that this assignment of error is meritless.

*State v. Knauff (direct appeal), supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

In his Reply and Traverse, Knauff relies on *Coy v. Iowa*, 487 U.S. 1012 (1988).

However, Judge Harsha's opinion reasonably distinguishes *Coy* and relies on the decision of the Supreme Court two years later in *Maryland v. Craig*, 497 U.S. 836 (1990).  Knauff makes no argument that the Fourth District unreasonably applied *Craig*.

Instead, Knauff relies on *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), where the Supreme Court held that the Confrontation Clause prohibits admission of certificate of an absent lab analyst of results of a blood test unless analyst was subject to cross-examination before trial. While *Bullcoming* is a later Supreme Court Confrontation Clause case, it does not call into question the principles accepted in *Craig*.

Knauff also relies on *United States v. Bordeaux,* 400 F.3d 548 (8th Cir. 2005).  In that case the Eighth Circuit disallowed a conviction in which the victim, a female child, was permitted to testify via two-way closed circuit television pursuant to 18 U.S.C. § 3509(b)(1)(B)(1).  The Eighth Circuit found the statute unconstitutional insofar as it permitted two-way video upon a finding that the child victim was unable to testify because of fear, unless the trial court found the fear was of the defendant rather than the setting, which the court found was required by *Craig*.  It joined the Eleventh Circuit in rejecting two-way video as a satisfactory substitute for face-to-face confrontation.  See *United States v. Yates*, 391 F.3d 1182 (11th Cir. 2004).  However, it also noted that the Second Circuit had found two-way video sufficient in *United States v. Gigante,* 166 F.3d 75 (2nd Cir. 1999).

This Court need not attempt to resolve this circuit split, because circuit court decisions cannot provide the basis for habeas corpus relief.  Rather, habeas relief is permitted only when the state court decision is an unreasonable application of a holding of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter,* 562 U.S. 86,  ___, 131 S.Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 141 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002);

*Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000);  *Bell v. Howes*, 703 F.3d 848 (6th Cir.

2012).

> AEDPA's standard is intentionally "' "difficult to meet." ' " *White v. Woodall*, 572 U. S. ___, ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698, 704 (2014) (quoting *Metrish v. Lancaster*, 569 U. S. ___, ___, 133 S. Ct. 1781, 1786, 185 L. Ed. 2d 988, 996 (2013)). We have explained that "'clearly established Federal law' for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U. S., at ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698, 704 (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." Id., at ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698, 704 (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing  law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U. S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

*Woods v. Donald*, 575 U.S. ___, 135 S. Ct. 1372, *, 191 L. Ed. 2d 464 (2015)(per curiam GVR),

reversing *Donald v. Rapelje*, 580 Fed. Appx. 277 (6th Cir. 2014).

Because the Fourth District's decision is not an objectively unreasonable application

Craig, Knauff's Second Ground for Relief should be dismissed.


**Ground Three:  Ineffective Assistance of Trial Counsel**


In his Third Ground for Relief, Knauff asserts his trial counsel provided ineffective

assistance when he failed to elicit certain testimony from witness Jerrylyn Younts at trial.

Knauff made this claim in his petition for post-conviction relief.  After the trial court denied the

petition without a hearing, Knauff again appealed to the Fourth District which decided the appeal

by writing in part as follows:

18

[**\*P15**]  While his direct appeal was pending in this court, Knauff, through yet another attorney, filed a petition for postconviction relief in the trial court. Knauff requested that the trial court declare his conviction and sentence to be void or voidable because his trial counsel did not provide him with effective assistance when counsel failed to elicit testimony from his fiancée, Younts, regarding an alternative explanation for the presence of his semen and saliva on the insulation beneath the hole in his bedroom floor. Attached to Knauff's petition was an affidavit of Younts in which she stated that: (1) she had talked with Knauff's trial counsel several times before and during the trial; (2) during those conversations, Younts told the attorney that on several occasions between March and September of 2009, she performed oral sex on Knauff in his bedroom; (3) on those occasions, Knauff ejaculated in her mouth and she spit the semen into the hole of the bedroom floor, (4) during the trial, Knauff's attorney failed to ask her questions that would have allowed her to testify to these facts, and (5) if she had been asked to testify to this information, she would have done so. The state filed a motion to dismiss the petition.

\* \* \*

[**\*P23**]  To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Warren*, 4th Dist. Ross No. 12CA3324, 2013-Ohio-3542, ¶ 25-26. On the issue of ineffectiveness, the petitioner has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. *Gondor*, 112 Ohio St.3d 377, at ¶ 62. Failure to satisfy either part of the test is fatal to an ineffective-assistance claim. *Strickland* at 697;  *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

 [**\*P24**]  For the first part of the test, the deficient performance requires that the defendant show that counsel's errors were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Calhoun*, 86 Ohio St.3d at 289, 714 N.E.2d 905, citing *Strickland* at 687. The United States Supreme Court has emphasized that judicial scrutiny of counsel's performance is highly deferential, dependent upon an evaluation from counsel's perspective at the time the conduct occurred, and

requiring the application of a strong presumption that counsel's conduct constituted sound trial strategy, even if ultimately unsuccessful:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

(Citations omitted.) *Strickland*, 466 U.S. at 689.

 [*P25] Knauff contests his trial counsel's strategy to not question his fiancée about him ejaculating in her mouth during sex on several occasions during the pertinent time and her spitting his semen into the hole in his bedroom floor. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 192. "There are numerous ways to provide effective assistance of counsel, and debatable trial tactics and strategies do not constitute a denial of that assistance." *State v. Cloud*, 5th Dist. Delaware No. 06CA090068, 2007-Ohio-4241, ¶ 37. Questioning witnesses is manifestly within the realm of trial strategy, and "we will not question counsel's strategic decision to engage, or not to engage, in a particular line of questioning as these decisions are presumed to be the product of sound trial strategy." *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 25 (appeal from judgment dismissing petition for postconviction relief); see also *Cloud* at ¶ 37 ("The decision to introduce evidence falls within the realm of trial strategy and does not rise to the level

of deficient performance on these facts"); *In the Matter of Riley*, 4th Dist. Washington No. 03CA19, 2003-Ohio-4109, ¶ 21 ("Failing to question witnesses on cross examination and choosing not to present witnesses fall within the realm of trial strategy"); *State v. Messer-Tomak*, 10th Dist. No. 10AP-847, 2011-Ohio-3700, ¶ 32, quoting *State v. Treesh*, 90 Ohio St.3d 460, 490, 2001 Ohio 4, 739 N.E.2d 749 (2001) ("counsel's decision about whether to call a witness generally 'falls within the rubric of trial strategy and will not be second-guessed by a reviewing court'").

[*P26]    Knauff's petition for postconviction relief did not overcome the strong presumption that his trial counsel's decision not to elicit the proffered testimony from Knauff's fiancée constituted reasonable trial strategy under the facts of the case. Knauff's trial counsel provided the jury with an explanation as to why Knauff's semen was found on the insulation underneath the hole in his bedroom floor—Knauff's testimony that he masturbated into the hole while watching his fiancée shower. In addition, trial counsel emphasized that the additional DNA found on the insulation in Knauff's bedroom did not match the DNA of either Knauff or his daughter.

[*P27]    As the trial court detailed in its decision dismissing Knauff's petition for postconviction relief, "[t]he fact that defense counsel did not present an alternative explanation, that [Knauff's] fiancé[e] has spit his semen into the hole, was clearly a tactical decision not to present the jury with conflicting explanations offered by [Knauff] and his fiancé[e], that could potentially undermine [Knauff's] credibility." Significantly, Knauff did not attach his own affidavit to his petition corroborating his fiancée's account of their sexual conduct during the period in question. Nor does he suggest on appeal that he would have confirmed her alternative explanation, even though he presumably would have witnessed the events specified in his fiancée's affidavit.

[*P28]    Moreover, although Knauff claims on appeal that if his counsel had elicited this testimony from his fiancée, any conflict could have been avoided by not calling Knauff to testify, his trial counsel could have justifiably determined that Knauff's testimony to defend himself against his daughter's allegations was crucial to his defense. See *State v. Huber*, 8th Dist. No. 98128, 2013-Ohio-97, ¶ 9 ("A decision regarding whether to call a defendant to testify on his own behalf during the course of trial is a matter of trial strategy").

[*P29]  Finally, trial counsel could have reasonably concluded that presenting the evidence proffered by Knauff's fiancée would also have caused more harm because it would establish Knauff's sexual practice to ejaculate in the mouths of persons with whom he engaged in sex with, thereby corroborating his daughter's testimony concerning his rape of her.

*State v. Knauff (post-conviction), supra.*

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S. 111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).

Judge Harsha's opinion as to why it might have been good trial tactics to fail to elicit the omitted testimony from Younts is not the all-too-frequent summary dismissal of a trial attorney's mistake as "tactics." Instead, he explains persuasively why the additional testimony would likely have been counterproductive.

In his Reply and Traverse, Knauff spends considerable time demonstrating why this claim was not barred in post-conviction by the Ohio criminal *res judicata* doctrine (ECF No. 1240-42). Knauff is correct and the Fourth District did not attempt to enforce a *res judicata* bar in this case.

Knauff argues it was not trial strategy to omit Younts' testimony about spitting in the hole in the floor because that would have explained the unidentified DNA found on the seized insulation in a way that excluded the victim (Reply and Traverse, ECF No. 9, PageID 1243). For the reasons given by Judge Harsha, the additional testimony from Younts, particularly if coupled with a failure to have Knauff himself testify, would have raised significant questions about Knauff's denial of the abuse, which would have been untestified to at that point.

Judge Harsha's opinion shows that the Fourth District knew and applied the correct Supreme Court precedent, *Strickland v. Washington, supra*. That court's application of

*Strickland* was not objectively unreasonable.

The second part of this Ground for Relief is Knauff's claim that it was unconstitutional to deny his post-conviction petition without a hearing. Claims of denial of due process and equal protection in collateral proceedings are not cognizable in federal habeas because they are not constitutionally mandated. *Kirby v. Dutton,* 794 F.2d 245 (6th Cir. 1986); *accord, Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001); *Johnson v. Collins,* 1998 WL 228029 (6th Cir. 1998); *Trevino v. Johnson*, 168 F.3d 173 (5th Cir. 1999); *Zuern v. Tate*, 101 F. Supp. 2d 948 (S.D. Ohio 2000), *aff'd.*, 336 F.3d 478 (6th Cir. 2003).

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

May 4, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).